IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TRAINOR GLASS COMPANY<br>715 East 7th Street<br>Richmond, Virginia 23224 | :<br><br>: | |
| Plaintiff | : | |
| v. | : | |
| JAMES G. DAVIS CONSTRUCTION<br>  CORPORATION<br>12530 Parklawn Drive<br>Rockville, Maryland 20852 | :<br><br>:<br><br>: | Case No. 1:07-cv-01497<br>Judge Royce C. Lamberth |
| and | : | |
| CAPITOL PLAZA I, L.L.C.<br>c/o Stephen A. Goldberg Company<br>1615 M Street, N.W., Suite 850<br>Washington, D.C. 20036 | :<br><br>:<br><br>: | |
| and | : | |
| VEF-VN CAPITOL PLAZA I, L.L.C.<br>c/o Corporation Service Company<br>1090 Vermont Avenue, N.W.<br>Washington, D.C. 20005 | :<br><br>:<br><br>: | |
| Defendants | : | |

**MEMORANDUM IN SUPPORT OF MOTION FOR
ORDER DISMISSING PENDING ARBITRATION**

COMES NOW, the Plaintiff, Trainor Glass Company, by and through counsel, Kevin M. Tracy and McNamee, Hosea, Jernigan, Kim, Greenan, & Walker P.A., and in support of its Motion for Order Dismissing Pending Arbitration, states as follows.

1

**Summary of the Argument**

There is no written agreement between James G. Davis Construction Corporation ("Davis") and Trainor Glass Company ("Trainor Glass"), let alone an agreement to arbitrate disputes between the parties. Therefore, the pending arbitration should be dismissed, and the parties' disputes should be resolved in this matter.

**Facts**

The Defendant, Davis, was the general contractor for the project known as Capitol Plaza I ("Project"). Davis subcontracted with a glass company known as East Coast Glass to provide labor and materials to the Project. However, after the Project began East Coast Glass encountered financial difficulties and allegedly defaulted on the subcontract. Around this same timeframe, Trainor Glass acquired certain assets of East Coast Glass.

After consummating the transaction with East Coast Glass, Trainor Glass entered into discussions with Davis regarding the completion of East Coast Glass's work on the Project. Trainor Glass represented it would complete the work only if a new scope of work and price were agreed upon, and upon agreement that Trainor Glass would not be liable for any defaults of East Coast Glass. Trainor Glass would not have agreed to complete the work without this agreement.

The parties exchanged a written Consent to Assignment of Subcontract that was intended to assign the remainder of the original subcontract between Davis and East Coast Glass to Trainor Glass. The original document was sent by Trainor Glass to Davis, and it included blanks to be filled in with relevant subcontract information. *See* Exhibit 1 attached hereto and incorporated herein by reference. Davis altered the document by adding a reference to unresolved claims against East Coast Glass in paragraph 2, signed it and returned it to Trainor

2

Glass. *See* Exhibit 2 attached hereto and incorporated herein by reference. Trainor Glass then further revised the document to ensure that it conformed to the parties' agreement regarding waiver of liability for East Coast Glass defaults, initialed the change, signed the document and returned it to Davis. *See* Exhibit 3 attached hereto and incorporated herein by reference. Davis never initialed the change shown on Exhibit 3, but it did instruct Trainor Glass to begin the scope of work.

Although the subcontract Davis held with East Coast contains an agreement to arbitrate, the proposed consent to assignment of the East Coast subcontract was never ratified due to Davis' refusal to accept Trainor Glass's change to a material term of the assignment. Therefore, no final assignment was executed by the parties, and the subcontract containing the arbitration clause is not part of any agreement between the parties. Without an executed agreement between Trainor Glass and Davis, there can be no basis to compel arbitration.

## Argument

### A. District of Columbia Law Controls

It is a well-settled general principle that a federal court holding jurisdiction over an action based upon diversity must apply the substantive law of the forum state. 28 U.S.C.A. §1652. More specifically, to the direct issue of determining whether the parties agreed to arbitrate is left to the law of the laws of the forum (the District of Columbia). *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

### B. There Exists No Agreement to Arbitrate

Davis argues that there is a binding agreement between the parties represented by the document titled Consent to Assignment of Subcontract ("Assignment") dated October 26, 2006. Davis contends that this Assignment transfers all of the relative terms contained in the

subcontract with East Coast to Trainor Glass, including the agreement to arbitrate. However, the purported Assignment is not a valid agreement. "The law is well settled that a statement purporting to accept an offer which contains a new material term operates as a counteroffer and must be accepted by the original offeror in order to form a binding contract." *Malone v. Saxony Co-op. Apartments, Inc.*, 763 A.2d 725, 728 (D.C. 2000) (citing *Dunn v. Shane,* 195 A.2d 409, 410-11 (D.C. 1963)). <u>See Also</u>, *N. Litterio & Co. v. Glassman Const. Co.*, 319 F.2d 736 (C.A.D.C., 1963); *Tracy v. Disman*, 137 A.2d 217 (D.C. Mun. App., 1957); *Cleborne v. Totten* 57 F.2d 435, 438 (C.A.D.C. 1932)("[A]ny qualifications of, or departure from, the terms, invalidates the offer, unless the same be agreed to by the person who made it."); *Iselin v. U.S.*, 271 U.S. 136, 139 (1926)("[A]n acceptance upon terms varying from those offered, is a rejection of the offer…"); *Carr v. Duval* 39 U.S. 77, 83 (1840)("[A]ny qualifications of, or departure from the terms, invalidates the offer, unless the same be agreed to by the person who made it.").

In the case of *Northland Capital Corp. v. Silver* the court was careful to note that an agreement returned containing a *materially different term* on an *essential item of the contract* could not constitute an acceptance. 735 F.2d 1421, 1429 (C.A.D.C. 1984). There can be no doubt that Trainor Glass's modification of the agreement affected a material difference on the agreement, and the item at issue was certainly essential. The specific items modified related to then pending change orders and unresolved claims Davis had pending against East Coast Glass. Trainor Glass was clear in its representations to Davis, both orally and through its change to the purported assignment, that it would not accept the subcontract unless the defaults of East Coast Glass were excluded from the assignment. Along with the scope of work and price, this was one of the most material terms to the parties' agreement. Therefore the Assignment Davis is attempting to hold out as a binding agreement, transferring all of the rights and past default under

the subcontract with East Coast on to Trainor Glass, cannot be said to have been an effective assignment of the subcontract.

Because the modification of the Assignment is not as acceptance of Davis' offer, but is a counteroffer that Davis never accepted, the terms of the Assignment and the underlying subcontract are not binding upon the parties. As such, no agreement to arbitrate exists between Trainor Glass and Davis.

### C. Arbitration May Not Be Compelled Without a Valid Agreement

"On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate." D.C. Code §16-4302. The District of Columbia Court of Appeals has expanded on this rule by stating that "[a]rbitration is predicated upon the **consent** of the parties to a dispute, and the determination of whether the parties have consented to arbitrate is a matter to be **determined by the courts on the basis of the contracts** between the parties." *Billard & Assoc., Inc. v. Mangum*, 368 A.2d 548, 551 (D.C. 1977) (emphasis added). This Honorable Court has positively cited *Billard & Assoc.* and continued to note that "[f]or the Court to require arbitration under the FAA, it must be able to conclude that the parties to the contract **explicitly agreed to arbitrate** the dispute at issue." *Brown v. Dorsey & Whitney, LLP*, 267 F.Supp.2d 61, 80 (D.D.C. 2003) (emphasis added).

As explained above, not only is there no agreement to arbitrate the particular issues *sub judice*, there exists no agreement to arbitrate at all. No valid contract was ever executed by the parties, and as such no agreement to arbitrate could possibly be found between the parties. In the clear absence of any such agreement demonstrating consent to arbitrate this Honorable Court should enter an order dismissing the pending arbitration filed by Davis.

**D. The Only Possible Written Agreement Between the Parties is the Assignment Containing Trainor Glass's Modification.**

As stated, *supra*, because a material term of the contract was altered but never accepted by both parties, the putative contract was never executed. Instead, all that may exist between the parties is an oral contract – which certainly does contain the clear and explicit agreement to arbitrate that is required for arbitration to be compelled. The parties' oral agreement encompassed the scope of work, price and exclusion of all East Coast Glass defaults.

In the event this Honorable Court does find that a written assignment of the subcontract exists between the parties, it must find that such agreement is Exhibit 3, the assignment which strikes Trainor Glass's liability for "pending change orders and claims which have not been resolved." Trainor Glass neither agreed to nor signed any other version of the document. While the alteration to the agreement was not countersigned by Davis, Davis did instruct Trainor Glass to commence work after receipt of the initialed and signed modified assignment. Trainor Glass's endorsement of the assignment was made on the condition of the above language being stricken from the agreement. Therefore, to hold Trainor Glass to any other version of the contract would unquestionably place a burden upon them for which they did not bargain and expressly disclaimed.

Indeed, Davis' request that Trainor Glass proceed to complete the work that was subcontracted to East Coast was done so after Trainor Glass made its counteroffer. If there were any acceptance, in the absence of Davis' countersignature to the changed language, it was Davis' conduct. It is well-settled that words alone are not the only median that may express assent. Indeed, assent may be expressed by conduct. *See Restatement (Second) of Contracts* § 19 (1979). Thus, since the agreement Davis is attempting to hold out as endorsed by Trainor Glass

strikes Trainor Glass's liability for "pending change orders and claims which have not been resolved," and it is that agreement that Davis alleges it was operating under, then Davis' assent to that agreement must be inferred from their course of conduct.

### Conclusion

"Arbitration is consensual; a creature of contract. As such, only those who consent are bound. These words summarize the most fundamental principle of American arbitration. In the absence of an express arbitration agreement, no party may be compelled to submit to arbitration in contravention of its right to legal process." Thomas J. Stipanowich, *Arbitration and the Multiparty Dispute: The Search for Workable Solutions*, 72 Iowa L.Rev. 473, 476-77 (1987). While the original subcontract that Davis entered into with East Coast contained an arbitration agreement, this subcontract was never accepted by Trainor Glass. The only agreement which bears an endorsement by Trainor Glass is not an acceptance, but a counteroffer as indicated by the markup on the first page of the purported agreement – a counteroffer which was not accepted and cannot be said to have created a valid contract. As such, Trainor Glass cannot be compelled to arbitrate and should not be forced to bear the added expense of pursuing its claims in two forums.

However, should this Honorable Court determine that a written agreement does exist between the parties, the common law rules of contract and common notions of fairness demand that such agreement be that which strikes the clause holding Trainor Glass liable for "pending change orders and claims which have not been resolved."

For the reasons set forth above, the Plaintiff, Trainor Glass Company, respectfully requests that this Honorable Court grant its Motion for Order Dismissing Pending Arbitration and grant such further relief that is deemed appropriate.

TRAINOR GLASS COMPANY

By its attorney,

Date: <u>September 14, 2007</u>            <u>/s/ Kevin M. Tracy</u>
                                           Kevin M. Tracy, Esq., Bar #463918
                                           McNamee, Hosea, Jernigan, Kim,
                                             Greenan & Walker, P.A.
                                           6411 Ivy Lane, Suite 200
                                           Greenbelt, MD 20770
                                           (301) 441-2420 phone

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below a true copy of the foregoing Memorandum in Support of Motion for an Order Dismissing Pending Arbitration was served by first-class mail, postage pre-paid, on the following.

> Stephen M. Seeger
> Emily D. Gooding
> Guagliano & Seeger, P.C.
> 2620 P Street, N.W.
> Washington, D.C. 2007
> *Attorneys for Defendants*

Date: <u>September 14, 2007</u>            <u>/s/ Kevin M. Tracy</u>
                                           Kevin M. Tracy, Esq.

EXHIBIT A

## CONSENT TO ASSIGNMENT OF SUBCONTRACT

Whereas East Coast Systems, Inc. (East Coast) has entered into a subcontract with James D. Davis Construction Corporation, (Davis) dated May 2005 to provide labor and materials in connection with Capital Plaza 1.

Whereas East Coast has entered into a letter of intent with Trainor Glass Company, Inc., (Trainor) for the sale of the assets of East Coast to Trainor.

Whereas the subcontract between East Coast and Davis requires the consent of Davis for any assignment of the subcontract.

Now therefore, in consideration of the payment of ten (10) dollars and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. As of the assignment date, the adjusted subcontract price is $_____ and there have been no changes, claims, or costs incurred through the referenced date that have not been accounted for in the adjusted subcontract price.

2. As of the assignment date, East Coast Glass Systems, Inc. has been paid $_____ against the adjusted subcontract price with the difference represented by retainage in the amount of $_____ being held by the Owner or the amount of $_____ owed to East Coast for work or materials furnished prior to the assignment date. The portion of the adjusted subcontract price attributable to the work to be performed or materials to be provided after the assignment date is $_____.

3. Davis consents to the assignment of the subcontract with East Coast Glass Systems, Inc. to Trainor Glass Company, Inc. effective as of the assignment date.

4. Trainor Glass Company agrees to complete the remaining obligations and scope of the work under subcontract.

5. As of the assignment date, Davis shall pay Trainor all sums, including retainage for work performed or materials supplied under the subcontract, in accordance with subcontract payment provisions.

6. Trainor shall be bound directly to Davis under the terms and conditions of the subcontract and any other contract documents referenced or incorporated therein after the assignment date.

So agreed this _____ day of _____, 2006.

_____
James D. Davis Construction Corporation

By: _____
    Print name


_____
East Coast Glass Systems, Inc.

By: _____
    Print name


_____
Trainor Glass Company, Inc.

By: _____
    Print name

EXHIBIT B

## CONSENT TO ASSIGNMENT OF SUBCONTRACT

Whereas East Coast Systems, Inc. (East Coast) has entered into a subcontract with James D. Davis Construction Corporation, (Davis) dated May 2005 to provide labor and materials in connection with Capital Plaza 1.

Whereas East Coast has entered into a letter of intent with Trainor Glass Company, Inc (Trainor) for the sale of the assets of East Coast to Trainor.

Whereas the subcontract between East Coast and Davis requires the consent of Davis for any assignment of the subcontract.

Now therefore, in consideration of the payment of ten (10) dollars and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. As of 26 October, 2006, the adjusted subcontract price is $ 4,087,171.00. There have been no changes, claims, or costs incurred through the referenced date that have not been accounted for in the adjusted subcontract price, except for pending change orders and claims which have not been resolved.

2. As of 26 October 2006, East Coast Glass Systems, Inc. has been paid $2,833,256.00 against the adjusted subcontract price with the difference represented by retainage in the amount of $ 338,526.22 being held by the Owner. The portion of the adjusted subcontract price attributable to the work to be performed or materials to be provided after 26 October 2006 is $701,908.20 except for pending change orders and claims which have not been resolved.

3. Davis consents to the assignment of the subcontract with East Coast Systems, Inc. to Trainor Glass Company, Inc. effective as of the assignment.

4. Trainor Glass Company agrees to complete the remaining obligations and scope of the work under subcontract.

5. As of 26 October 2006, Davis shall pay Trainor all sums, including retainage for work performed or materials supplied under the subcontract, in accordance with subcontract payment provisions.

6. Trainor shall be bound directly to Davis under the terms and conditions of the subcontract and any other contract documents referenced or incorporated therein after 26 October 2006 in accordance with the provisions of the contract.

So agreed this 26th day of October 2006.

*Margaret D. Jones*
James D. Davis Construction Corporation
By: Margaret M. Jones,
Sr. Vice President, Finance

_____
East Coast Glass Systems, Inc.
By: _____
    (Print Name)

_____
Trainor Glass Company, Inc.
By: _____
    (Print Name)

EXHIBIT C

### CONSENT TO ASSIGNMENT OF SUBCONTRACT

Whereas East Coast Systems, Inc. (East Coast) has entered into a subcontract with James D. Davis Construction Corporation, (Davis) dated May 2005 to provide labor and materials in connection with Capital Plaza I.

Whereas East Coast has entered into a letter of intent with Trainor Glass Company, Inc (Trainor) for the sale of the assets of East Coast to Trainor.

Whereas the subcontract between East Coast and Davis requires the consent of Davis for any assignment of the subcontract.

Now therefore, in consideration of the payment of ten (10) dollars and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. As of 24 October, 2006, the adjusted subcontract price is $4,087,171.00. There have been no changes, claims, or backcharges through the referenced date that have not been accounted for in the adjusted subcontract price, except for pending change orders and claims which have not been resolved.

2. As of 24 October 2006, East Coast Glass Systems, Inc. has been paid $2,839,258.00 against the adjusted subcontract price with the difference represented by retainage in the amount of $ 334,596.29 being held by the Owner. The portion of the adjusted subcontract price attributable to the work to be performed or materials to be provided after 24 October 2006 is $701,908.29 except for pending change orders and claims which have not been resolved.

[handwritten note: DELETED BY TRAINOR NOT INITIALED BY DAVIS]

3. Davis consents to the assignment of the subcontract with East Coast Systems, Inc. to Trainor Glass Company, Inc. effective as of the assignment.

4. Trainor Glass Company agrees to complete the remaining obligations and scope of the work under subcontract.

5. As of 26 October 2006, Davis shall pay Trainor all sums, including retainage for work performed or materials supplied under the subcontract, in accordance with subcontract payment provisions.

6. Trainor shall be bound directly to Davis under the terms and conditions of the subcontract and any other contract documents referenced or incorporated therein after 26 October 2006 in accordance with the provisions of the contract.

So agreed this fifth day of October 2006.

_____
James D. Davis Construction Corporation
By: Margaret M. Jones,
Sr. Vice President, Finance

_____
By: DARYL E. FREER JR
(Print Name)

_____
Trainor Glass Company, Inc.
By: Thomas D. Trainor
(Print Name)