UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRAINOR GLASS COMPANY Plaintiff, v. JAMES G. DAVIS CONSTRUCTION CORPORATION, *et al.* Defendants. | ) ) ) ) ) ) ) Civil Action No. 07-1497 (RCL) ) ) ) ) ) ) ) |

**MEMORANDUM & ORDER**

On August 28, 2007, defendant James G. Davis Construction Corporation ("Davis") moved [3] for an order compelling plaintiff Trainor Glass Company ("Trainor") to arbitrate its claims and staying litigation in this Court [1].[1] Plaintiff Trainor then filed a motion of its own [7], seeking an order dismissing the pending arbitration. The Court has considered Davis's motion [3] and Trainor's opposition [6];[2] Trainor's motion [7] and supporting memorandum [8], Davis's opposition [10], and Trainor's reply [11]; as well as the applicable law. For the reasons

---

[1] Previously, Davis had served a demand on Trainor for arbitration before the American Arbitration Association. (*See* Def. Mem. Supp. Mot. Ex. B.) In response, Trainor submitted both counterclaims and objections to jurisdiction to the arbitrators. (Def. Mem. Supp. Mot. Exs. C, D.) After the motions presently under consideration had been filed, the arbitrators apparently disposed of Trainor's jurisdictional objections, concluding their jurisdiction was proper. (*See* Def.'s Supplemental Mem. Ex. 1.) Regardless, in ruling on the parties' motions, the Court must independently ascertain whether an agreement to arbitrate exists. *See Bailey v. Fannie Mae*, 209 F.3d 740, 746 (D.C. Cir. 2000).

[2] Although Davis has not filed a reply, its time to do so has elapsed, Local Civil Rule 7(d), and the Court deems it appropriate to resolve these conflicting motions simultaneously.

set forth below, Davis's motion [3] shall be GRANTED, and Trainor's motion [7] shall be DENIED.

Davis served as general contractor for Capitol Plaza I, a construction project within the District of Columbia. (Compl. ¶¶ 6, 7; Answer ¶¶ 6, 7.) In this capacity, it executed a subcontract with East Coast Glass Systems ("East Coast") to provide and install glass and glazing within the project. (Compl. ¶ 7; Answer ¶ 7; Def. Mem. Supp. Mot. Ex. A ("Subcontract") ¶ 2.) That subcontract expressly provided that all "[d]isputes with Davis [would] be resolved by arbitration in accordance with the rules of the American Arbitration Association." (Subcontract ¶ 19.) It also stipulated that no assignment of the subcontract would be "allowed" without Davis's written approval. (*Id.* ¶ 30.)

During the contract term, Trainor acquired East Coast's assets and at least some of its liabilities. (Compl. ¶ 9; Def. Mem. Supp. Mot. 4.) Thereafter, Trainor sent Davis a form entitled "consent to assignment of subcontract." (*See* Pl. Mem. Supp. Mot. Ex. A.) It declared, *inter alia*, that East Coast had "entered into a letter of intent with [Trainor] for the sale of the assets of East Coast to Trainor." (*Id.* at 1.) It then proposed an agreement under which: 1) Davis would consent to East Coast's assignment of the subcontract to Trainor; 2) Trainor would perform all remaining work under the subcontract, for which it would receive a commensurate portion of the contract price; and 3) Trainor would be "bound directly to Davis under the terms and conditions of the subcontract." (*Id.* at 1, 2.) As transmitted, the document included several "blanks" where, presumably, Davis was to add in dollar amounts. (*See id.* at 1; Compl. ¶ 12; Answer ¶ 12.)

Davis subsequently filled in the dollar values, signed the form, and returned it ("Version One"), but Davis also made several other changes. (Compl. ¶ 12; Answer ¶ 12; *Compare* Pl.

Mem. Supp. Mot. Ex. A *with* Pl. Mem. Supp. Mot. Ex. B.)  In particular, it added qualifying language – "except for pending change orders and claims which have not been resolved" – to its calculation of the as yet unpaid portion of the contract price.  (*Compare* Pl. Mem. Supp. Mot. Ex. A at 1, *with* Pl. Mem. Supp. Mot. Ex. B at 1.)

On receipt, Trainor crossed out this qualifying language, initialed beside the alteration, and returned the form ("Version Two") to Davis.  (*See* Pl. Mem. Supp. Mot. Ex. C at 1; Compl. ¶ 12; Def. Mem. Supp. Mot. 5.)  Davis neither signed nor returned the form.  (Compl. ¶ 12; Def. Mem. Supp. Mot. 5.)  Trainor performed the prescribed work – it claims, at Davis's behest – but after a dispute arose between the parties, Trainor filed mechanic's liens and this lawsuit.  (Pl. Mem. Supp. Mot. 3.)

Defendant's motion relies on the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, while plaintiff's motion cites the District of Columbia Uniform Arbitration Act, D.C. Code § 16-4301 *et seq*.  The Court's duty under each is the same.

Under both statutory schemes, a written contractual provision requiring the parties to submit to arbitration any controversies arising from the contract is valid and enforceable.[3]  When

---

[3] *Compare* 9 U.S.C. § 2 (2008) ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."), *with* D.C. Code § 16-4301 (2008) ("[A] provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

Under federal law, of course, the transaction must implicate Congress's Commerce Clause powers.  *See* 9 U.S.C. § 1 (2008) (defining "commerce" under the Act as "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation").

a party seeks to compel or halt arbitration based on the existence or absence of such a provision, the Court must first ascertain whether the parties have indeed agreed to arbitrate.[4]  "Courts have drawn a distinction between challenges to the *validity* of the underlying contract and challenges to its very *existence*.  Where there is a dispute about whether any contract ever even came into being, the issue is generally considered to be one for the court to determine." *Dassero v. Edwards*, 190 F. Supp. 2d 544, 554 (W.D.N.Y. 2002).  If an agreement to arbitrate does exist, the court must leave all other matters to the arbitrator. *Woodland L.P. v. Wulff*, 868 A.2d 860, 865 (D.C. 2005).

      Here, Davis contends that East Coast agreed to assign the subcontract to Trainor; that this assignment could become operative only with Davis's consent; that Trainor thereafter solicited its consent; and that its subsequent written approval in Version One rendered the assignment immediately effective.  (*See* Def. Mem. Supp. Mot. 4-5; Def. Opp. 6-7.)  On this theory, the original subcontract and Version One embody the parties' agreement.

      Although it occasionally refers to itself as an assignee, (*e.g.*, Compl. Ex. 2 at 1), Trainor neither directly admits nor implies that it formed a separate assignment agreement with East Coast, as would be necessary for to transfer East Coast's rights and/or duties under the

---

[4] *Compare* 9 U.S.C. § 4 (2008) ("upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," but "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof"), *with* D.C. Code § 16-4302(a) (2008) ("if opposing party denies the existence of the agreement to arbitrate, the Court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party").

subcontract to Trainor.[5] Instead, Trainor argues the "consent to assignment of subcontract" constituted a distinct agreement between itself and Davis. (Pl. Mem. Supp. Mot. 3-4.) Thus, when Davis returned Version One to Trainor after adding the qualifying language, this was an offer. (*Id.* at 4-5.) When Trainor crossed out that language and returned Version Two to Davis, it made a counter-offer. (*Id.*) Because Davis never signed and returned Version Two, Trainor contends its counter-offer was never accepted, and no contract was formed. (*Id.*) Alternatively,

---

[5] In its opposition to Trainor's motion, Davis asks the Court to apply the doctrine of judicial estoppel to bar Trainor from denying the assignment based on a sentence in Trainor's notice of intent to claim a mechanic's lien. (Def. Mem. Opp. 3-4.) Judicial estoppel holds that "[w]here a party assumes a certain legal position in a proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). Courts may invoke this equitable doctrine at their discretion, but relevant considerations include: (1) whether the party's present position is clearly inconsistent with its previous position; (2) whether the party "succeeded in persuading a court to accept the party's earlier position"; and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

Leaving aside whether a notice of intent to claim a mechanic's lien constitutes a "proceeding," Trainor's present position is not clearly inconsistent with that taken in the notice. As general principles of contract law, an obligee can assign his right to receive the obligor's performance, and an obligor can delegate his duty to perform; but a party cannot assign rights he does not hold (e.g., to receive his own performance) or delegate duties he does not owe (e.g., to render the performance due to him). Yet throughout its filings in this case, Trainor appears to suggest that *Davis* could "assign" *East Coast's* rights and/or duties under the subcontract to Trainor. (*E.g.*, Pl. Mem. Supp. Mot. 2 ("The *parties* exchanged a written Consent to Assignment of Subcontract that was intended to assign the remainder of the original subcontract between Davis and East Coast Glass to Trainor Glass.") (emphasis added).) The notice of intent's language seems to reflect this same misunderstanding: it states the subcontract was "assigned to the Claimant on October 26, 2006," (Compl. Ex. 2 at 1), the date on which Trainor claims it commenced performance on the project, (Compl. ¶ 20). Moreover, as the matter remains under litigation, Trainor has clearly not "succeeded in persuading a court to accept [its] earlier position," and Davis does not argue it will suffer an unfair detriment due to Trainor's present position. Accordingly, the Court finds judicial estoppel inappropriate here.

if Davis's acceptance can be implied from the parties' subsequent performance, Trainor insists Version Two embodies their agreement. (*Id.* at 6-7.)

"[W]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options v. Kaplan*, 514 U.S. 938, 944 (1995). *See also Ballard & Assocs., Inc. v. Mangum*, 368 A.2d 548, 551 (D.C. 1977) ("Arbitration is predicated upon the consent of the parties to a dispute, and the determination of whether the parties have consented to arbitrate is a matter to be determined by the courts on the basis of the contracts between the parties.").

It is axiomatic that "formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange" – offer and acceptance – and consideration. Restatement (Second) of Contracts §§ 17, 22 (1981). "[A]n acceptance[] upon terms varying from those offered[] is a rejection of the offer[] and puts an end to the negotiation, unless the party who made the original offer . . . assents to the modification suggested." *Iselin v. United States*, 271 U.S. 136, 139 (1926).[6] Such assent may be conveyed expressly, in words, or through conduct. *See Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995) ("Mutual assent to a contract . . . is most clearly evidenced by the terms of a signed written agreement[] but . . . may be shown instead, or in addition, by the conduct of the parties.").[7]

---

[6] *Accord Malone v. Saxony Coop Apartments, Inc.*, 763 A.2d 725, 728 (D.C. 2000) ("a statement purporting to accept an offer which contains a new material term operates as a counteroffer and must be accepted by the original offeror in order to form a binding contract"). *See also* Restatement (Second) of Contracts § 39 (1981) ("[a] counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer").

[7] *See also* Restatement of Contracts § 19 (1981) (party may manifest assent wholly or partly by conduct, so long as he intends to engage in the conduct and knows or has reason to

When parties form a valid contract, "the written language embodying the terms of [the] agreement governs the rights and liabilities of the parties." *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 361 (D.C. 2005). As a general rule, parties may freely assign these contract rights and liabilities, but courts typically honor unambiguous contractual language prohibiting assignments. *Flack v. Laster*, 417 A.2d 393, 399 (D.C. 1980).[8] A valid assignment requires only that the assignor manifest a present intention to transfer his rights and/or duties to the assignee, who must usually manifest his assent to the assignment. Restatement (Second) of Contracts §§ 324, 327 (1981). The assignee then "stands in the shoes of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract." *Manganaro Corp. v. Jefferson at Penn Quarter, L.P.*, No. 04-2133, 2005 U.S. Dist. LEXIS 35714, at *8-9 (D.D.C. Aug. 9, 2005) (Kessler, J.).

If, as Trainor suggests, no separate assignment agreement between Trainor and East Coast exists, then Version One constitutes an offer from Davis to Trainor: it states terms on which Davis will pay Trainor a specified amount for a specified performance. (*See* Pl. Mem. Supp. Mot. Ex. B.) Version Two omits qualifying language that would reduce Trainor's compensation – the consideration Davis would pay – based on "pending change orders" and unresolved claims against East Coast. (*See* Pl. Mem. Supp. Mot. Ex. C at 1.) Thus, Version Two materially differs from Version One and constitutes a counteroffer. *Iselin*, 271 U.S. at 139. Although Davis never signed and returned Version Two, it effectively assented to the offered terms by instructing

---

know the other party may infer assent from his actions).

[8] *Cf.* Restatement (Second) of Contracts § 322 cmt. d (1981) (noting that because contractual prohibitions on assignment are typically inserted for the obligor's benefit, his consent to an assignment waives the prohibition).

Trainor to commence performance. *Davis*, 664 A.2d at 838. Under Version Two's terms, Trainor was "bound directly to Davis under the terms and conditions of the subcontract." (Pl. Mem. Supp. Mot. Ex. C at 2.) Thus, even if no separate assignment agreement exists, the subcontract's express terms, including its arbitration clause, apply to Trainor, and it must submit its claims to arbitration. *See Meshel*, 869 A.2d at 361.

Alternatively, if East Coast and Trainor formed a separate assignment contract, then Trainor "stands in the shoes of" East Coast and "acquire[d] the same rights and liabilities as if [it] had been an original party to the [sub]contract." *Manganaro Corp.*, 2005 U.S. Dist. LEXIS 35714, at *8-9. This would, of course, include the duty to submit all disputes with Davis to arbitration. (Subcontract ¶ 19.) Though the subcontract stipulated that no assignment would be "allowed" without Davis's written agreement, (*id.* ¶ 30), courts often construe such provisions narrowly, *see* Restatement (Second) of Contracts § 322 (1981), and in any event, Trainor sought and obtained Davis's consent to the assignment. Thus, if a separate assignment agreement does exist, the subcontract's express terms, including its arbitration clause, apply to Trainor, and it must submit its claims to arbitration.

Davis and Trainor disagree as to whether Trainor and East Coast formed a separate assignment agreement.[9] But either way – as an assignee of the original subcontract or under an independent contract that incorporates its terms – the arbitration clause binds Trainor.[10]

---

[9] ( *See* Pl. Mem. Supp. Mot. 2-3 (stating "no final assignment was executed"); Def. Mem. Supp. Mot. 2 ("East Coast Glass Systems assigned the Subcontract to Trainor on or about October 26, 2006").)

[10] If this Court were to rule that one or the other Version bound Trainor to arbitrate, its holding would necessarily intrude into the arbitrators' sphere: from the pleadings, it appears that Trainor's success on the merits will turn on whether it assumed East Coast's then-existing

Under both federal and District of Columbia law, where a valid agreement to arbitrate exists, on application of one of the parties, a court must stay pending litigation until arbitration has occurred. 9 U.S.C. § 3 (2008); D.C. Code § 16-4302(d) (2008). *See also Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C. Cir. 1987); *Judith v. Graphic Communs. Int'l Union*, 727 A.2d 890, 891 (D.C. 1999).

Accordingly, it is hereby

ORDERED that because the record is clear, plaintiff's motions [9, 14] seeking an evidentiary hearing are DENIED as unnecessary; it is further

ORDERED that defendant's motion [3] to compel arbitration is GRANTED; it is further

ORDERED that plaintiff's motion [7] to dismiss arbitration is DENIED; and it is further

ORDERED that plaintiff's claims against James G. Davis Construction Corporation shall be arbitrated, and its case in this Court shall be STAYED pending completion of arbitration.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, on March 19, 2008.

---

liabilities to Davis. (*See* Compl. ¶ 12 ("Trainor Glass completed the work but has not been paid in full. Davis has alleged backcharges against Trainor Glass due to the defaults of East Coast Glass Systems.").) Under Davis's theory, it appears Trainor *did* assume those liabilities. Under Trainor's theory, it appears it did not. Fortunately, the Court need not reach this issue in resolving the threshold arbitrability question.